THE STATE OF FLORIDA, EX REL. THOMAS K. DIXON, VS. THE TRUSTEES OF THE INTERNAL IMPROVEMENT FUND, RESPONDENTS.

1. A paid to the Salesman of the Trustees of the Internal Improvement Fund the price of a parcel of land and received a certificate of sale stating that a deed would be made and delivered to the purchaser, which certificate was under the seal of the State Land Office. The certificate was recorded in the Clerk's office of the proper county. Afterwards the Trustees conveyed the land by deed to B. On the application of A for a writ of mandamus to compel the Trustees to issue to him a deed in pursuance of the certificate, it is *held*, that as they had conveyed to B, no title remained in them and they could give none to A.

2. Registration is notice to subsequent purchasers, but does not affect the grantor.

3. Though mandamus may be a proper proceeding to compel the Trustees to make a deed in pursuance of their agreement, yet where they have conveyed to another, notwithstanding the contract, the grantee has legal title which cannot be impaired or affected by a mandamus proceeding in which he is not a party, and the writ will be refused. The real controversy in such case is between the purchasers.

The Governor, Comptroller, Treasurer, Commissioner of Lands and Immigration and the Attorney-General are *ex-officio* Trustees of the Internal Improvement Fund of the State of Florida.

The other facts of the case are stated in the opinion.

*Augustus W. Cockrell* for Relator.

*George P. Raney* for Respondents.

THE CHIEF JUSTICE delivered the opinion of the court.

Relator on the 22d day of August, 1882, made payment at the office of the Commissioner of Lands and Immigration for forty-three acres of land belonging to the Internal Improvement Fund, in Brevard county, and received from the Commissioner and Salesman a certificate acknowledging such payment and stating that " a deed conveying said lands to the said Thomas K. Dixon will be issued as soon as the same is signed by the Trustees of the Internal Improvement Fund," sealed with the seal of the State Land Office and signed by the Commissioner. This certificate was recorded in the Clerk's office in Brevard county August 26, 1882.

Relator avers that the Trustees refuse to execute the deed according to the contract, and prays a mandamus to compel the Trustees to give him a deed. An alternative writ was issued.

The Trustees make return that on the 23d day of June, 1883, by a deed in due form, they granted, bargained, sold and conveyed the same land to Mary E. Titus, of Brevard county.

Thereupon relator moves the court that a peremptory writ be issued. This is equivalent to a demurrer to the return.

We assume for the purposes of this case that mandamus is the proper remedy to compel the Trustees to convey land held by them, as such Trustees, which they had agreed to convey and for which they have received payment. Until

they execute a deed of conveyance the legal title remains in them, and as between them and the bargainee they hold such legal title in trust for him as the equitable owner. The Trustees are public officers, and among their duties under the law is that of executing conveyances of the lands held by them for sale and sold to purchasers.

In this case they bargained the land to Dixon, but afterwards conveyed the legal title to Mrs. Titus. Now the relator seeks to compel them to convey the legal title to him. But they have no title to convey. Both the legal and the equitable title have gone out of them to Mrs. Titus. There can be no plainer proposition than that they cannot grant what they have not, and of which they have no control. Nothing remains in them to convey.

The courts will refuse to interfere by mandamus when it is apparent that the interests of third parties not before the court are involved. In Houghton Co. vs. Com'r of Land Office, 23 Mich., 270, there was an application for a mandamus to compel the Commissioners to cause patents to be issued to the county for certain selections of swamp land appropriated to the county for the construction of a road. The County Supervisors having made selections under the law and the land officers made return that some of the lands selected had been sold to individuals, among them one Loring, the court say: "We do not feel at liberty to try his (Loring's) rights in the present proceeding, or to order the issuing of another patent: nor are we satisfied that we could, in this proceeding, invalidate the prior patent, nor that this can be done in any way except by *scire facias* for that special purpose, or, perhaps, by bill in chancery."

Says the court in Tabor vs. The Com'rs of the General Land Office, 29 Texas, 521: "If there were no other objection to the application for the writ of mandamus in this

case, the fact that there are other claimants to the land, who are not parties to this proceeding, would furnish grounds for refusing it. The averment that their claims are void will not relieve the matter of the difficulty ; for this court will not undertake to adjudicate their claims, whether valid or not, when the claimants are not parties to the suit." See also Com'rs vs. Smith, 5 Texas, 484 ; Smith vs. Power, 2 Texas, 57 ; Bracken vs. Wells, 3 Tex., 91 ; Queen vs. Powell, 1 Ad. & E., (N. S.) 351, 360.

"A mandamus will not be granted when it is reasonable to presume that there are persons at the time in possession under another title and who therefore should have an opportunity to defend it. (This was a case of mandamus to the Com'r of the Land Office.) The relator has mistaken his remedy, for if his title under the certificate is valid, and presents a superior equity over the opposing title, as in the case of Lyttle *et al.* vs. The State of Arkansas, 9 How., 315, and Lindsay vs. Hawes, 2 Black., 554, the appropriate remedy is by bill in equity." U. S. vs. The Commissioner, 5 Wall., 563.

The case of Smithee, Commissioner of State Lands vs. Moseley, 31 Ark., 425, was very like the present. One Parnell bought land from the State and paid for it in 1861, and Parnell sold and conveyed to Moseley. In 1872 the Commissioner of State Lands again sold to Smith and Renfrow and patents were issued to them in 1874. The court on application for for a mandamus to the Commissioners says : " The State, in making the patents to Renfrow & Smith, whether rightly or not, parted with her title, and now has nothing to grant. If, in the purchase of the land in 1861, Parnell acquired such a right to the land as entitled him to a patent for it, a court of equity would, in a suit by him against the party holding the legal title under the patent, declare him as holding it in trust for him, and

direct a conveyance thereof to him. As there can be no decision upon the title where the party claiming under the patents is not before the court, the issuance of another patent to the appellee, would be a nugatory and void act."

Relator insists that because his certificate of purchase was recorded in the office of the Clerk of Brevard county before the conveyance to Mrs. Titus was executed, she is chargeable with notice of his purchase and therefore the deed not having been made to a *bona fide* purchaser without notice conveyed no title to her as against him, and they have not deprived themselves of the power to give him a title.

We cannot conceive what effect the registration of the certificate, or other notice thereof to Mrs. Titus, can have upon the action of the Trustees, or how the effect of their deed to her is nullified by such notice without judicial action upon it. If Mrs. Titus, without any superior legal or equitable right, has purchased this land and obtained a deed with notice of relator's prior equities, it may be that a court of equity will, upon bill filed for that purpose, set aside and annul her legal title and thus remove the obstacle which now prevents him from obtaining a patent; or by decree declare that she holds in trust for him and direct her to convey to him. We have never understood that the recording of a deed or paper was intended to be *notice to the grantor*.

Relator says: "Looking to the intention and object of the Legislature in passing Chapter 3127, it was designed to protect the holder of a duly recorded certificate from any subsequent sale of the Trustees, by declaring invalid such subsequent title, as against the holder of a prior duly recorded certificate of sale, and thus strip the Trustees of the power to make a subsequent sale."

We understand the effect of registration is that it is evi-

dence of notice to a subsequent purchaser in a controversy between grantees. The very suggestion indicates that the subsequent ·purchaser must be a party to any proceeding seeking to invalidate or affect his legal title. The Supreme Court of the United States and the courts of all the States, so far as we are informed, agree that mandamus is not a proper proceeding in which to try conflicting titles to land, or conflicting claims of this character.

The motion for a peremptory writ is denied.