STATE, *ex rel.* MARTIN H. LONG, v. JAMES G. CAREY, RAY GREEN, JOE S. HAMMOND, R. T. GRAY, and D. C. BROWN, as and constituting the Board of County Commissioners of Duval County, Florida.

164 So. 199.
Opinion Filed November 9, 1935.

516

*Milam, McIlvaine & Milam,* for Relator;

*Fant & Stanley, F. P. Fleming* and *H. A. Kooman,* for Respondents.

CAMPBELL, Circuit Judge.—Upon the sworn petition of the relator, an alternative writ of mandamus issued from this court directed to the respondents as, and constituting, the Board of County Commissioners of Duval County, Florida. The commands of the alternative writ are that the respondents as members of the Board of County Commissioners of Duval County, Florida, do forthwith fix and levy taxes and tax rates for Duval County, Florida, upon the taxable real and personal property within said county, non-exempt and non-homestead in character, in such amount as may be necessary to pay the interest on and to provide a sinking fund for the redemption of the bonded indebtedness of said county and school tax districts therein, as appropriated in the Budget of said county theretofore adopted; or that they show cause why they have not done so.

The alternative writ of mandamus alleges in substance, that the relator is the head of a family and citizen of, and resides in, Duval County, State of Florida, and owns in fee simple a homestead, particularly described in said alternative writ of mandamus, the same being situated in Duval County, Florida, and occupied by relator as his homestead; that the same is a homestead within the purview of Section 7, Article X of the Constitution of Florida, and is of a valuation and assessed at an assessable valuation of less than $5,000.00. That the respondents as the Board of County Commissioners of Duval County, Florida, on September 30, 1935, *pursuant to their duties* as *prescribed in Section 937, Compiled General Laws of Florida, and Chapter 16838, Laws of Florida, Acts* 1935, adopted a resolution spread at large upon their minutes, a copy of which is

attached to alternative writ as Exhibit 1; that by said resolution the respondents *did fix the rates to be levied* for any and each county fund of Duval County, Florida, and *did ascertain* the aggregate rate necessary to cover all the ad valorem taxes to be raised on the taxable real and personal property of said county in separate amounts necessary to carry on the governmental functions of said county and necessary to pay interest on, and provide sinking funds for, the redemption of the funded indebtedness and outstanding bonds; all of which things were done by said respondents pursuant to the budget prepared and adopted by the Duval County Budget Commission for the fiscal year 1933-36.

It is further alleged that in and by the resolution above referred to, it was *determined by the Board of County Commissioners* that the total valuation of real and personal property in Duval County, Florida, subject to taxation was $59,578,878.00 of which said property the homestead property of the type entitled to the benefit of Section 7, Article X, of the Constitution of Florida, constituted $10,520,280.00, and that by such resolution the said respondent *did fix and levy to provide a levy for debt service and sinking funds upon various county bonded indebtedness; setting out in full such levies, and millages fixed and provided*:

It is further alleged, that the levy of the taxes thus made by the respondents and the rates thus fixed by them, is an insufficient levy to provide a sinking fund for the redemption of the indebtedness and outstanding bonds of the county as appropriated in the County Budget, *if* said rates are calculated upon and levied upon the $49,578,568.00 of non-exempt property within the county, and that the respondents in calculating said millage took into consideration the levy upon the non-exempt, and also the *exempt property as*

*aforesaid in order to raise the necessary taxes for debt service,* so that it will be necessary for the Tax Assessor of Duval County, Florida, to assess and levy taxes for debt services proposed, upon relator's exempt homestead and other exempt homesteads in order to raise and provide the necessary tax funds to pay the interest and sinking fund requirements of said county bonds; that unless the Tax Assessor shall levy taxes and assess the payment against your relator's said homestead and similar exempt property, the bonds of Duval County, Florida, will fall into default and thereby the *contract rights of the holders of said bonds will be impaired,* and that the tax assessor of Duval County has informed relator that he will be compelled to immediately prepare the Tax Rolls of the county assessing the taxes against relator's homestead upon the rates fixed for the purpose of providing funds to pay the interest and sinking fund requirements of said county upon the various issues of bonds of the county and its special tax districts set forth in the alternative writ; that the Tax Assessor of Duval County will, contrary to the mandate and provisions of Section 7, Article X of the Constitution of the State of Florida, levy and assess taxes against relator's homestead to provide funds to pay the interest and provide sinking funds for the redemption of funded and outstanding bonded indebtedness of Duval County, Florida, unless the writ of mandamus prayed for is awarded; *"That all of said county bonds existed as a county debt or lien prior to the adoption of Section 7, Article 10, of the Constitution of the State of Florida."*

The alternative writ of mandamus further alleges in substance, that it is the duty of the respondents as County Commissioners of Duval County, Florida, to levy sufficient taxes and fix sufficient tax rates to be levied for each fund

as provided in the Budget of said county, adequate to raise taxes, upon the *non-exempt taxable property* of said county *sufficient to pay the interest on and provide a sinking fund for the redemption of the bonded indebtedness of said county as appropriated in the Budget;*

It is further alleged that the assessable and taxable real and personal property of said county of Duval which is of the character of the *non-exempt* and not included in the homestead property, is ample in value to provide the necessary tax moneys upon a proper assessment of the rate of taxation thereon to *take care of and pay the requirements of interest and sinking fund of the said county bonds of Duval County,* district school bonds, and Inland Navigation bonds, and that should the respondents perform their mandatory duty under the laws of Florida, to fix and levy the proper rate of millage upon said non-exempt property, such levy will provide adequate means for the payment of the said debt service requirements of the said county *including the sinking fund and interest on the county bonds.*

The respondents have moved to quash the alternative writ of mandamus, upon several grounds set forth in the record. Of these several grounds of the motion, we think it only necessary to discuss a few in our consideration of the merits of the questions involved. We would at this time specially quote the following grounds of the motion, to-wit, the second, which is as follows:

"It does not appear that the relator has a clear legal right to a reformation of the millage rates as to each of the issues of bonds described in the alternative writ."

The third, which is as follows:

"It is not made to appear that the sums required to be raised for bond principal and interest would actually be

raised by complying with the mandate of the alternative writ."

The fifth, which is as follows:

"It appears that the owners of the several issues of bonds referred to in the alternative writ are necessary parties to a suit which is designed to restrict or prevent an exercise of the taxing powers pledged as security for the payment of said obligation."

The eighth ground, which is as follows:

"The tax assessor is a necessary party to this suit."

The seventh ground, as follows:

"Relator has an adequate statutory remedy."

At the very threshold of our consideration of this case, it appears that a proposition of vital importance and one which is probably decisive of relator's right to a peremptory writ of mandamus is, the interest of third parties apparently involved in the controversy, who are not before the court. In State of Florida, *ex rel.,* v. Trustees of I. I. Fund, 20 Fla. 404 (text), we said:

"The courts will refuse to interfere by mandamus when it is apparent that the interests of third parties not before the court are involved."

In that case this court was considering a controversy in which the relator brought mandamus to compel the Trustees of the Internal Improvement Fund to convey by deed certain lands which their agent had contracted to sell relator, but which the respondents had, subsequent to such contract, conveyed to another. The grantee in the deed from the respondents was not a party in the mandamus proceedings. In the consideration of that case, the Chief Justice, who wrote the opinion for the court, quoted with approval from U. S. v. Commissioner, 5 Wall, 563, the following:

"A mandamus will not be granted when it is reasonable to presume that there are persons at the time in possession under another title and who should therefore have an opportunity to defend it, etc."

In several cases decided since the case of State, *ex rel.*, v. Trustees I. I. Fund, *supra,* this Court has reiterated its position, declining to grant writ of mandamus where the sub- ·stantial interests of third parties, not before the court as parties in the proceedings, were involved. See State v. Richards, 50 Fla. 284, 39 So. 152; State v. Wolfe, 58 Fla. 523, 50 So. 511.

In the case of State of Florida, *ex rel,* v. Richards, *supra,* we held as follows:

"Writ of Mandamus will not be awarded when it is evident that substantial rights of parties not before the court are involved."

"Mandamus will not as a general rule issue where the rights of third persons, not parties, would be injuriously affected. Where questions of grave. importance concerning rights of persons who have had no opportunity to be heard are involved in mandamus proceedings, the court may refuse the writ, *although it is an appropriate remedy."* (Italics supplied.) 38 C. J., page 558, par. 30.

Among the cases cited to support this text in Corpus Juris, is the case of State v. Trustee I. I. Fund, 20 Fla. 402, *supra.*

· In the case at bar, it is admitted by the allegations of the alternative writ of mandamus that the several bond issues of Duval County, and of the Special Tax School Districts involved, were issued prior to the adoption of Section 7, Article X, of the Constitution of the State of Florida. It is .conceded by the allegations of the alternative writ of mandamus, that if homesteads of the value

of $5,000.00 and less are not assessed and taxed to procure funds for interest payment and sinking fund requirements for principal on bonds, there will be an impairment of bond contracts unless a sufficient increased rate of tax is assessed and levied against non-exempt or non-homestead property. When the bonds referred to in the alternative writ were issued, the law provided for the levy of a tax on *all* the taxable property, real and personal, in the territory covered by the taxing districts, or in the *county* where county-wide bonds were issued. The bondholders purchased the bonds with the assurance that under the statutes, taxes were to be levied annually on all property including homesteads, to provide funds to take care of interest on the bonds, and to create and maintain a sinking fund for the retirement of principal. This provision for the levy of a tax, and the kind and class of property upon which such tax for debt service on the bonds was to be made, was a very essential element entering into the obligation of the contract of the bonds. As we have said, it is practically conceded by the relator that there will be an impairment of the bond contracts by the elimination of the homesteads from taxation, unless non-homestead property is subjected to an increased levy. If the ceasing to tax the homestead property in itself works an impairment of the obligations of the contract of the bonds, would not each bondholder have a substantial interest in any proceeding which undertakes to have the taxing authorities reconsider and revise the tax levy made and the rate and millage determined to provide funds for debt service on the bonds, so as to remove all the tax from the homesteads, and place an increased rate and millage on the non-exempt and non-homestead property? The tax levy on the homesteads for debt service on bonds, which was authorized and required by

law at the time these bonds were issued, was doubtless considered by the bond purchaser a source from which revenue for the payment of the bond obligations would be regularly and promptly received. If a proceeding in the courts is had whereby this substantial contract right is to be questioned, or to be changed, it would appear that the bondholders are most interested parties, and an order affecting their interests can not be validly or legally made when they are not parties to the proceeding.

We think the allegations of the alternative writ of mandamus also clearly show that the non-exempt or non-homestead property owners of Duval County, Florida, and the several Special Tax School districts have substantial interests which will be affected if the commands of the writ are to be made peremptory.

As appears from the allegations of the alternative writ, that the relator is seeking to have the respondents, County Commissioners of Duval County, Florida, to reconvene and revise and change the levy of tax, tax rate and the rate of millage for debt service on the bonds of the county and its several districts, which they have already fixed and determined, at an equal rate upon both homesteads and non-homestead lands, so as to take the entire levy from *homestead* real estate and proportionately increase the levy on *non-homestead* real estate.

When the bonds now to be paid and redeemed were issued, all the taxable real and personal property in the affected territories were under the law, to be taxed annually to provide the necessary revenue. At that time under Section 1, Article IX, all taxable property was subject to "a uniform and equal rate of taxation * * * under such regulations as shall secure a just valuation of all property real and personal." The statutory provision for levy-

ing the tax to pay the interest on, and to provide the sinking fund to retire the principal of bonds, and the constitutional provision that the rate should be uniform upon all property real and personal, entered into and became a part of the bond contract of each issue of bonds, making such levy of tax at a uniform rate effective under the law for the purposes stated, against all real estate in the affected territory, whether homestead or non-homestead, and, under the decided weight of authority, they are still effective for such purposes, notwithstanding the provisions of Section 7, Article X of the Constitution of Florida, adopted November 6, 1934, subsequent to the issue of all the bonds described. See Von Hoffman v. Quincy, 4 Wall, 535, 18 L. Ed. 403; Galena v. Amy, 5 Wall. 705, 18 L. Ed. 560; Mobile v. Watson, 116 U. S. 289, 6 Sup. Ct. Rep. 398, 29 L. Ed. 620, Osborn v. Nicholson, *et al.*, 13 Wall. 654-664, 20 L. Ed. 689; Gunn v. Barry, 15 Wall. 610-624, 21 L. Ed. 212; Edwards v. Kearzey, 96 U. S. 595, 24 L. Ed. 793; King v. Columbia County, 13 Fla. 451; State v. Lehman, 100 Fla. 1313, 131 So. 533; Rorick v. Everglades Drainage District, 57 Fed. (2nd) 1048; State v. Milam, *et al.*, 113 Fla. 491, 153 So. 100.

. As already observed, the alternative writ of mandamus admits that all the bonds referred to therein, requiring debt service, were issued prior to the adoption of Section 7, Article X, Constitution of the State of Florida, *supra.*

· As we have also already said in this opinion, it is conceded by the relator that at the time of the issuance of the bonds, the obligations of the contracts therein were such that a levy of sufficient tax on *all* real and personal taxable property for debt service thereon, was by law required to be annually made, and that this tax was to be levied on all taxable property, whether homestead or not. There-

fore, when the bonds were issued, the land used, owned and occupied as homes, and the lands used, owned and occupied for business or other purposes, and those not used at all, were alike liable to pay the tax for debt service on bonds, at a uniform rate, based upon a just valuation.

In so far as the requirements for debt service on bonds issued prior to November 6, 1934, are concerned, each of such classes of taxable property is, under the law subject to such tax levy until such bonds have been retired, unless some other provision be legally made to provide funds.

In the present proceedings the relator, the owner of a homestead, which under the law when the bonds were issued, was liable to taxation for debt service, at a uniform rate with non-homestead lands, is seeking to have the burden upon his property to keep unimpaired the contract obligation of the bonds, lifted, and placed upon other lands not homesteads, which, under the law, when the bonds were issued, were liable *only* for the same uniform rate of taxation for debt service as was the property of the relator. The relator practically says, "It is true that under the bond contract of Duval County, and its Taxing Districts, my home as well as the business property of my neighbor were alike under the law which became a part of the bond contract made liable to a uniform rate of taxation for debt service on such bonds, yet, because, subsequent to the bond issue, the Constitution was amended to exempt homesteads from taxation therefor, remove from my homestead the uniform rate of taxation required to take care of the bond obligations by increasing the rate on the non-homestead land of my neighbor, thereby increasing the burden upon it, although strictly speaking, under the provisions of Section 10, Article I, of the Constitution of the United States, and the great weight of authority, the exemption provisions of

Section 7, Article X, of the Constitution of the State of Florida, is inoperative and void, as affecting the right to levy taxes on homesteads for debt service purposes on the bonds in question." Have not the owners of non-exempt and non-homestead lands a very substantial interest in the granting or the refusal of such relief, as prayed for in the alternative writ? We think they have.

The substantial interests of the holders of the bonds of Duval County, Florida, and its taxing districts, and also of the owners of non-homestead lands in the said county and districts are such in our opinion, as to prevent the granting of a peremptory writ. The granting of the peremptory writ would bring about endless disorder and confusion. The rights of neither of these affected interests can be determined in this proceeding so as to make the findings of the court binding on either of them. Should the writ be granted, the bars will be let down for numberless actions by bondholders, and non-homestead landowners in the affected territory for the adjudication of their respective rights involved and affected by any order granting to the relator the relief prayed for.

The bondholders could, and doubtless would, bring mandamus proceedings to have the statutory levy of tax, provided at the time of the issue of their bonds, made against the relator's homestead and the homesteads of others relying upon the constitutional inhibitions of Section 10, Article I, of the Constitution of the United States. Then, too, the owners of non-exempt or non-homestead lands could, and doubtless would, file innumerable statutory proceedings under Section 3274, Revised General Statutes, 5082 C. G. L., to have the assessments made against their lands under the revision or change proposed in this proceeding, declared not lawfully made. Or any such non-ex-

empt property owner might by another proceeding in mandamus seek to have the proposed revision, if it should be ordered made, changed back to its present status. Or each might file injunction proceedings to restrain the collection of the taxes thus thrust upon their property by the revision of the tax rate in this proceeding. A peremptory writ issued in this case would not be *res adjudicata,* as to either bondholders, or non-exempt landowners. The disorder, confusion and disturbance that would result from the granting of a judgment making the commands of the alternative writ herein peremptory are such in our opinion that such writ should not be granted, even if the relator has a clear legal right for which mandamus is a proper remedy. See 38 C. J. page 550, par. 21; Bibbs v. Gaston, 146 Ala. 434, 40 So. 936.

The respondents also raise the point that the tax assessor of Duval County, Florida, is a necessary party to the proceeding. It appears from the allegations of the alternative writ that the tax roll was, when the writ issued, in the hands of the Tax Assessor, the same having been delivered to him by the respondents, after they had *determined* the amount to be raised for all county purposes, and reported to the tax assessor under the provision of Section 731, Revised General Statutes, 937 Compiled General Laws of Florida. It is further alleged that the Tax Assessor was at the time of the issuance of the alternative writ of mandamus entering the amount of the tax as levied, in the proper columns on the assessment roll. Until the Assessor has completed his labors, the respondents could not compel him to return the roll to them for a revision of the levy, except by order of court. Therefore, if the respondents were to be directed to procure from the Tax Assessor the rolls, before he had completed it, the Tax Assessor should

have been made a party, so that the writ would require him to deliver the tax roll to the respondents. If the Tax Assessor refused to deliver the roll, the respondents could not obey the command of the writ if made peremptory. Another ground set forth in the motion to quash the alternative writ herein is, that the relator has other adequate remedies.

In the case of State, *ex rel.* Ellis, v. Atlantic Coast Line R. Co., 53 Fla. 650, 44 So. 213, 13 L. R. A. (N. S.) 320, we said: "The writ of mandamus does not supersede legal remedies, but rather supplies the want of legal remedy. Therefore two prerequisites must exist to warrant a court in granting this extraordinary remedy; first: it must appear that the relator has a clear legal right to the performance of the particular duty by the respondent; and second, that the law affords no other *adequate or specific remedy* to secure the performance of the duty which it is sought to coerce." And again in the same case we said: "The proceeding by mandamus can only be resorted to when there is no *other adequate legal remedy to accomplish the purpose sought thereby.*" (Italics supplied.) Among the other opinions rendered by this court holding that mandamus will not be granted when there is another adequate remedy, are the following cases: State v. Call, 41 Fla. 450, 26 So. 1016; State v. Richards, 50 Fla. 284, 39 So. 152; State v. Haskell, 72 Fla. 176, 72 Sou. 651; Myers v. State, 81 Fla. 32, 87 So. 80.

From the allegations of the alternative writ of mandamus in the instant case, the relator, if the respondents have unlawfully imposed a tax on his homestead for debt service upon bonds, instead of levying upon non-exempt property a millage sufficient to meet the entire bond requirements, so as to relieve his property of such levy, then the

relator has an adequate, easy and expeditious remedy under the provisions of Section 3274, Revised General Statutes, 5082 C. G. L., by having the alleged illegal assessment on his homestead declared not legally made, or as being an invalid assessment.

"It is very generally held that the existence of a special statutory remedy will exclude mandamus although the act sought to be compelled is purely ministerial in its nature." 38 C. J. 568, par. 39; State v. Martin, 55 Fla. 538, 46 So. 424.

"The purpose of a writ of mandamus is not to establish a legal right but to enforce one which has already been established; the legal right of a relator to the performance of the particular act of which performance is sought to be compelled must be clear and complete." 38 C. J. 532; Welch v. State, 85 Fla. 264, 95 So. 751; Hardee v. State, 83 Fla. 544, 91 So. 909; Myers v. State, 81 Fla. 32, 67 So. 80.

In view of the admission made in the alternative writ of mandamus that the bonds of Duval County, and its taxing districts, were issued prior to the adoption of the constitutional amendment exempting homesteads from all ad valorem taxation, except "assessments for special benefits," and, furthermore, in view of its being practically conceded that the obligation of the bond contract, included the provision of the then existing law that a tax on all taxable property, including homesteads, should be annually made to provide funds for debt service, can it be said that the relator has a clear legal right, under such circumstances to have his homestead relieved from the burden of the uniform rate of tax and millage imposed by the respondents on all taxable property for debt service on bonds for the fiscal year 1935-1936? In our opinion, the alternative writ fails to show such a clear legal right to the relief sought

as to warrant this court, in the exercise of a sound discre-
tion, in granting the peremptory writ.

"At common law the issuance of a writ of mandamus is
not a matter of course; being in its nature a prerogative
writ, its issuance is, to a certain extent, a matter of judicial
discretion, and even in this country, where the prerogative
character of the writ is no longer recognized, the exercise
of the jurisdiction to grant it rests, to a considerable ex-
tent, in the sound discretion of the court, subject always
to the well settled principles which have been established
by the courts." Myers v. State, 81 Fla. 32, 87 So. 80. See
also: Welch v. State, 85 Fla. 264, 95 So. 781, *supra;* Tampa
Water Works Co. v. State, 77 Fla. 705, 82 So. 230.

From the above quoted statement found in an opinion of
this court, and from the citations of other decisions in this
jurisdiction, we see that this court has aligned itself with
other states holding that the granting of mandamus is in
the sound discretion of the court.

"The discretion which the court may exercise is not an
arbitrary discretion, but a *judicial* or *legal* one, to be ex-
ercised on equitable principles, and in accordance with well
settled rules of law. * * * Nevertheless the court in the
exercise of its discretion may and should take into consid-
eration a wide variety of circumstances in determining
whether the writ should issue. It is elementary that the
court is not bound to allow the writ merely because the ap-
plicant shows a clear legal right for which mandamus would
be *an appropriate remedy,* even though without mandamus
the applicant for the writ would be without remedy. *Even
under these circumstances* the court may *deny* the writ,
*where by its issuance the public would be injuriously af-
fected,* or where it would operate inequitably upon the de-

fendant, * * * *or would injuriously affect the rights of* third persons" etc. 38 C. J. 549-550, par. 18 (Italics supplied).

We have already discussed the effect of the ·issuance of .a peremptory writ in this case, upon the rights' of the bond-holders and of the owners of non-exempt and non-home-stead land, they being absent as parties to the suit. It ·is ·unnecessary to repeat these observations, though they enter .into the court's' discretion in determining what its holding should be. We have also expressed the opinion herein that there has not, under all the circumstances, been made to appear that the relator has a clear legal right to the relief prayed. We have considered also the other adequate relief to which the relator has, in the event the levy and millage .determined by the respondents, County Commissioners', is ·unauthorized, or is not lawful. In this connection we might further observe that the relator may have a further relief in equity by securing injunction against the collec-tion of the millage complained of, if it has not been legally assessed. While the relief in equity may not be consid-·ered as' the ·adequate relief at law, which would of itself ·operate to bar mandamus, yet the availability of such relief in equity may be considered by, and it may influence, the ·court in the exercise of its discretion in awarding or re-·fusing the peremptory writ. See: 38 C. J. page 563, par. 33·.

In addition to what we have already said touching the sufficiency of the allegations of the alternative writ of mandamus to warrant the granting of an order making the writ peremptory, after the exercise of sound judicial discre-tion, we would observe that the writ apparently seeks to con-trol the discretion of the respondents, in the determination of the amount of millage to be levied upon property made ·taxable by the statute for debt service upon the bonds re-ferred to in the alternative writ. Section 731, Revised Gen-

eral Statutes, 937 C. G. L., *supra,* provides that the County Commissioners *"shall determine"* the amount to be raised for all county purposes and shall enter upon their minutes the rates to be levied for each found respectively and shall *ascertain* the aggregate rate necessary to cover all taxes," etc. (Italics supplied.) They were not, under the statute, to perform a mere ministerial function or duty to make mere calculations, but they were, in their proper discretion, to *determine the amount to be raised and the millage required* to provide the amount. While mandamus will lie to compel a board to exercise its discretion, it will *not* lie to control the discretion. Again we would say the writ probably comes too late. The respondents, as the Board of County Commissioners, had, according to the alternative writ, functioned. They had already determined and ascertained the amount to be levied. They had performed a discretionary duty.

It is very earnestly contended by the relator, that the case of County Commissioners of Columbia County v. King, 13 Fla. 451, is ample authority for the relator to ask that the non-homestead property have imposed upon it a levy of tax at a sufficient rate and millage to overcome the loss in revenue from failure to tax his, and other, homesteads for debt service on bonds. We do not agree with the contention of counsel as to the effect and conclusiveness of the Columbia County Comm'rs v. King case, on the cause now being considered. In the case of County Comm'rs of Columbia County v. King, 13 Fla. 451, *supra,* this court was considering a case where one King, as Trustee, holding certain bonds issued by Columbia County, Florida, brought mandamus proceedings against the County Commissioners of the county to compel the payment of certain interest coupons of bonds issued by the County of Columbia, and the

accrued interest on the coupons. Among the defenses raised by the respondents in the case was the fact that the Legislature of Florida, after the bonds were issued, had created certain new counties from the territory constituting Columbia County at the time of the issue of the bonds, and that the Board of County Commissioners had no legal power to assess and collect taxes beyond the boundaries, as constituted at the time the action was brought against them. In the decision of that case this Court said:

"Bonds were issued by Columbia County, and afterwards a portion of her territory was detached and formed into new counties, *and provision was made in the act of separation that the new counties should compensate the County of Columbia according to the relative pro rata assessed valuation in the territory detached. Held* that it is not necessary or practicable to make the new counties parties in a proceeding against Columbia County, to enforce collection of bonds."

In discussing the circumstances of the case upon which the foregoing pronouncement was made by the court, Mr. Chief Justice RANDALL said, on pages 470-471, text 13th Florida, the following:

"It does not appear that any effort was made in the Circuit Court to cause the Commissioners of Suwanee and other counties to be made parties, and that the court refused. But it is not considered that it was necessary, even if it were demanded by the appellants. One writ of mandamus could properly go against the officers of but one county. *These bonds were issued by the officers of Columbia County.* The relator holds the obligation of that county, and has no direct legal claim against the new counties." (Italics supplied.) * * *

"There is no question of the right of the Legislature

to divide counties already established, and to form new counties out of portions of their territory."

Mr. Chief Justice RANDALL further said:

"In the division of Columbia County (Laws of Florida, 1858, page 39) it was provided that the Commissioners of Columbia County should set apart and transfer to each of them so many shares of the capital stock of the Atlantic and Gulf Central Railroad Company as should be necessary to constitute a fair division between the three counties, of the ten thousand shares of said stock held by Columbia County, to be determined by the amount of taxable property within the limits of each, as appeared by the assessment made next preceding the transfer; and that Suwanee and New River should, in making such transfer of stock, deliver to Columbia County, bonds with coupons attached, to be made payable at periods corresponding with the bonds of Columbia County. And it was made the duty of the County Commissioners of Suwanee and New River, from *time to time, to levy and collect such a tax as should be necessary to meet the interest on the bonds as they became due,* and in case of the failure of the new counties to collect the tax and pay the bonds and interest, then it should be done, as heretofore, by the *assessor and collector* of Columbia County. (Italics supplied.)

"It is, therefore, seen that the *inhabitants and the property taken from Columbia County were not relieved from their liability to pay their just proportion of the indebtedness of old Columbia County, and a means was provided for compelling the payment of their share of it."* * * * (Italics supplied.)

In the case just considered, and quoted from, the court held that the lands detached by the legislative enactment, from Columbia County, to create new counties, were liable

to be taxed for the retirement of the bonds of Columbia County issued prior to creation of new counties. That the creation of the new counties from such detached lands removed such lands from the jurisdiction of Columbia County, and beyond the taxing control and taxing power of its Board of County Commissioners, *unless* and *until* the taxing officers of such new counties failed and refused to assess and collect the tax required to be levied upon the lands within their boundaries, to provide funds to pay the principal and interest on the bonds of the new counties to Columbia County, evidencing the obligation of the inhabitants and lands of such counties, to pay their proportionate part of the old debts of Columbia County.

The Court held that the lands detached from Columbia County, and created into new counties, were not, for that reason relieved from liability to continue to be taxed for debt service on the bond obligations of Columbia County contracted before the creation of its new counties. Since the bonds were the contract obligations of Columbia County, as a legal entity, the proceeding by the bondholder to enforce the payment of the interest on the bonds was necessarily brought against the Board of County Commissioners of Columbia County, though the lands in the newly created counties, taken from old Columbia County, remained liable under the law to be taxed for their proportionate share of the funds required to meet such bond obligation.

The court held that in the mandamus proceeding then being considered the County Commissioners of the new counties were not necessary nor proper parties, because the County of Columbia was the debtor, and it devolved upon its authorities to provide the funds to pay the interest. There was nothing in the record of the case to show that the new counties had not already met their obligation to Columbia

County to pay their proportionate part of the amount necessary for such debt requirements. If they had not then under the mandamus proceedings brought against the Board of County Commissioners of Columbia County, they could be compelled, as provided by the Act creating new counties, to proceed to collect the taxes in the new counties. We can see no such parallel in the case of Columbia County v. King and the instant case that makes the holdings in the former, as to necessary parties, or as to operation and effect of Section 7, Article X, Constitution of Florida, on the liability of homesteads for debt service purposes on bonds of a county or taxing district issued prior to the adoption of such constitutional provision, of material importance in this case.

In the former case a bondholder was seeking to compel the county authorities to provide for the payment of the bonded obligation of the county by the levy of a statutory tax to be imposed on property subject to taxation, for debt service on the bonds, some of the lands subject to taxation for a proportionate part of the required funds being located in new counties made up of such lands. Legislative provision having been made in the Act creating such counties for the levy and collection of taxes on said lands, for their part of the debt service requirement, by the old county, if the taxing authorities of the new counties failed and neglected to make such levy.

In the instant case we are considering, not a proceeding brought by a bondholder to require the county commissioners to levy and collect a tax for debt service on bonds, but we are discussing a proceeding brought by the owner of an alleged homestead admittedly liable to a uniform rate of taxation for debt service on bonds, if the county and taxing districts in question, when they were

issued, to have such uniform rate of taxation intended to be levied on all taxable property in the territory involved, lifted from such homesteads, and the tax rate on non-exempt property increased in proportion. In the case at bar the lands asked to be relieved from the tax are still within the bounds of the county, and within the taxing territory of the county. And as already said they are admittedly liable under the provisions of Section 10, Article I, Federal Constitution, to taxation for the obligations described in the alternative writ. As we have already said in this opinion, the substantial interests of the bondholders and of the owners of non-exempt lands, are plainly involved, and we fail to find anything in the case of Columbia County v. King, *supra,* to show that the relief sought in this proceeding can be granted and made legally operative against the substantial interests of the above mentioned parties.

Neither is the case of Columbia County v. King authority to sustain the contention that a tax rate sufficient to cover the loss of the tax on homesteads by their release from tax levy for debt service requirements under the law, may be laid upon non-exempt property, as the source primarily liable for such debt service.

Under the law existing when the bonds were issued, which as we have already said, entered into and became a part of the obligation of the bonds, *all taxable property,* real and personal, of which the homesteads were a part, was made *primarily* liable. While the County of Columbia was the legal entity "primarily liable" in the Columbia County v. King case, there was provision made to enforce a tax for the payment of the bonds against the lands in the new counties as well as the old, and there was nothing in the opinion to require that the County Commissioners raise, or endeavor to raise, the entire sum from the lands

within its bounds, before proceeding to enforce the collection of the taxes on the lands in the new counties liable for such tax for the same debt service.

It is very earnestly and ably contended in behalf of the relator, that this is not a proceeding to withdraw homesteads from their liability for debt service, but that the proceeding involves only the matter of procedure of the method of levying the tax. It is contended that the proceeding seeks no exemption, but only the performance of a clear duty prescribed by law, that the respondents levy upon that property, first, which is designated as a primary fund for the payment of all bonded indebtedness. It is further contended that such a levy upon non-exempt property would not work an impairment of the bond contract, because in the event the tax realized from such levy on non-exempt property proved insufficient, the homesteads could then be taxed for the deficiency. We do not think such a contention is tenable. When the bonds were issued, as we have already observed, the law which became a part of the contract, made *all* taxable property subject to the tax for debt service on the bonds. Is there any assurance that the bondholders' contract right will not be impaired by the proposed plan? Any official action contrary to that provided by the statutory provisions incorporated in the contract, regarding taxation, might delay, postpone, and possibly diminish, or destroy, the contract provisions for the payment of the interest on, and retirement of, the principal of the bonds. If the proposed levy on non-exempt property for 1935-1936 should be found insufficient, then, if the theory of the relator is to be adopted, the bondholders would be required to wait on the experiment, and the obligations of their contracts be impaired by a delay and postponement of the acquisition of funds, which may have been

ample if the property contracted to be taxed for such service had been taxed. We think that even on the theory that the homesteads might later be taxed, if the proposed levy on non-exempt property prove insufficient, there would yet be such a possible impairment of the contract as would not justify the granting of the relief desired in a proceeding where the bondholders likely to be affected are not parties before the court.

The remarks already made herein regarding the interests of the owner of non-exempt taxable property, are applicable also in the discussion of the theory of the relator, just considered.

As we view this case, we are not called upon to decide whether or not the taxing authorities can legally relieve homesteads from taxation for debt service on bonds issued prior to the adoption of Section 7, Article X of the Constitution of Florida, by levying an increased millage on non-exempt property sufficient to cover the loss of revenue incurred by relieving homesteads from such tax. We do not have before us proper parties to warrant a pronouncement one way or the other on this phase of the question.

We are of the opinion that the motion to quash the alternative writ of mandamus herein should be granted, and the proceeding dismissed.

It is so ordered.

WHITFIELD, C. J., and TERRELL, BROWN and DAVIS, J. J., concur.

BUFORD, J., concurs specially.

BUFORD, J. (concurring specially).—I think the County Tax Assessor is a necessary party to this proceeding and as he is not made a party the alternative writ should be quashed with leave for amendment.