MARTIN H. LONG v. A. H. ST. JOHN, as Tax Assessor of
Duval County, *et al.*

170 So. 317.
Opinion Filed October 26, 1936.

*Milam, McIlvaine & Milam,* for Appellant;

*Cockrell & Cockrell, A. W. Cockrell, Jr., Fant & Stanley, Fleming, Hamilton, Diver & Lichliter, F. P. Fleming* and *H. A. Kooman,* for Appellees.

WHITFIELD, C. J.—The bill of complaint herein was brought by the appellant here, who, it is alleged, "is the head of a family and a citizen and resident of the State of Florida and of Duval County, Florida, and is the owner in fee simple of a homestead within the purview and intent of Section 7 of Article X of the Constitution of the State of Florida, which homestead is described as Lot Thirty-nine (39) of ARDEN, according to plat thereof recorded amongst the public records of Duval County, Florida; Being the residence property located at 1937 Greenwood Avenue, Jacksonville, Florida;

"That the said homestead is of a valuation and assessed and assessable valuation of less than $5,000.00 and is situated and located in Special School Tax District No. 1 of Duval County, Florida, all of which conditions existed prior to January 1, 1935, and continuously therefrom to this date. That the plaintiff has performed all of the acts and conditions precedent under the Chapter 17060, Laws of Florida, 1935, to entitle the plaintiff to claim his said homestead as exempt from taxes within the purview of the Con-

stitution of Florida, and Section 7 of Article X thereof, and all things have happened, and all times elapsed and all events occurred to entitle the plaintiff to claim the exemption of his said homestead from taxation to the valuation of $5,000.00 in accordance with the said constitutional exemption."

By amendment the parties defendant are the tax assessor and the county commissioners of Duval County, an owner of non-exempt property in the county and a holder and owner of bonds of Duval County, Florida, of the issue known as Special Tax District No. 1, the two last named parties being members of a large class having common interest in the subject matter of this suit and by order of court are made defendants for the purpose of representing the classes aforesaid.

It is alleged:

"That said 'County Commissioners * * * on September 30, 1935, pursuant to their duties as prescribed by the statutes of Florida,' by resolution 'did fix a rate of millage and a levy of taxation in Special School Tax District No. 1 of 6 mills consisting of 3 mills for interest and 3 mills for sinking fund upon the total properties returned to them by the County Tax Assessor as assessable property in Special School Tax District No. 1 of Duval County, Florida, of a total valuation of $54,704,027.00 which includes the plaintiff's said homestead, and did direct the said County Tax Assessor to assess the debt service taxes for the said Special School Tax District No. 1 upon and against plaintiff's said homestead and all other homestead property in said School Tax District of the valuation of $9,541,120.00;

"That by the said resolution aforesaid, the said defendant County Commissioners did further assess and levy for general County Bonds in Duval County, Florida, upon the

total assessable property of said County the total of .548 mills for interest on Armory bonds, interest on Funding bonds and sinking fund on Funding bonds, and also a levy of 1 mill for interest and sinking fund on Florida Inland Navigation District bonds, which levy is made upon the plaintiff's homestead and upon all other homestead properties in Duval County, Florida, on a total assessed valuation of $59,598,878.00, of which there is exempt homestead properties in said county of the valuation of $10,520,280.00;

"That the plaintiff is informed and alleges the fact to be that the Tax Assessor of Duval County, Florida, is now preparing the extensions on his Rolls and making a levy of taxes against the plaintiff's homestead and all other homestead property in said County for the foregoing county debt service and Florida Inland Navigation District interest and sinking fund, and also upon the other homestead property situate in Special School Tax District No. 1 of said County with intent and purpose of levying upon the said homestead for the raising of the said debt service moneys notwithstanding the inhibitions and prohibitions of Section 7 of Article 10 of the Constitution of Florida because it is claimed by the said Tax Assessor and the plaintiff alleges it to be the fact that the aforesaid millage of 6 mills in Special School Tax District No. 1 and of .548 mills for general County obligations and of 1 mill for the said Florida Inland Navigation District is calculated upon the total assessed valuation of properties including homesteads and if calculated upon the non-exempt properties, as aforesaid, would return insufficient funds for the debt service of either the County obligations or of said Special School Tax District No. 1, and would thereby render the bonds of the County and of said School Tax District in default as to

interest and principal thereof, thus impairing the obligation of the contracts held by the bondholders, the owners and holders of said bnods. That unless the remedy by injunction herein prayed is immediately granted, without notice the injury apprehended will occur and the Tax Rolls so being prepared by the Tax Assessor will pass out of his hands and out of the hands of the defendant County Commissioners and beyond their power to remedy or recall the same so that an unlawful and illegal tax will be levied upon and against the plaintiff's homestead and other homesteads in said County as aforesaid;

"* * * that in Special School Tax District No. 1 the assessable property non-homestead in character is of a total valuation of $54,704,027.00, and the homestead property therein is of an assessable valuation of $9,541,120.00. Wherefore, approximately 83% of the property in said Special School Tax District No. 1 is non-homestead in character and the said non-exempt property is ample in value to provide the necessary tax moneys upon a proper assessment at the rates of taxation therein to take care of and pay the requirements of interest and sinking fund of the School District bonds of said District and should the said defendants perform their duties under the laws and Constitution of the State of Florida and levy the taxes for debt service in said district upon the non-exempt property therein and upon a proper rate of millage, the said levy will and would provide adequate means for the payment of said debt service requirements for bond interest and sinking fund upon the County bonds without resort to or the necessity for levying upon the homestead property in said School Tax District. That the same condition is true as to the general County bonded obligations of Duval County and the millage therefor as well as the Florida Inland Navigation District

bonds, in that the total property homestead in character in the County of Duval is but 16% of the assessed property and the non-exempt property constitutes approximately 84% of the property in said county, and upon a proper levy of millage calculated upon the property non-exempt in character, ample taxes would be returned to take care of and pay the debt service requirements aforesaid."

It is prayed:

"(a) That the defendant Tax Assessor may be immediately enjoined and restrained and permanently enjoined from attempting to assess or levy taxes upon and against the plaintiff's homestead for the debt service requirements of either Special School Tax District No. 1 or of Duval County in General or of the Florida Inland Navigation District unless and until a proper levy at a proper millage rate has been made upon the non-exempt properties subject to taxation for said debt service and the said levy failed to return and pay sufficient tax moneys to take care of the interest and sinking fund requirements of said bonds;

"(b) That the defendant Board of County Commissioners of Duval County, Florida, be likewise restrained and enjoined from making a levy as aforesaid upon the plaintiff's homestead property and that they be further required to forthwith meet and correct and amend their said levy of taxes and their directions to the Tax Assessor of Duval County, Florida, by raising the millage rates in said Special School Tax District No. 1 and the millage rates for said Florida Inland Navigation District taxes and the millage rates for the said debt service general County obligation, to such an appropriate rate that the said rate will return proper taxes upon and against the non-exempt property to pay and take care of the said bonded indebtedness for interest and sinking fund;

"(c) That immediate restraining order be issued by this Honorable Court against the tax assessor as aforesaid to prevent the impending delivery of the County Tax Rolls to the County Commissioners and to prevent the doing of the illegal acts aforesaid, and that upon a hearing of the said restraining order, it be converted to an injunction and thence into a permanent injunction as hereinabove prayed."

A temporary restraining order was made on condition of giving a prescribed bond.

The defendant owner of non-exempt and non-homestead property in the taxing units and the defendant owner and holder of bonds of the taxing unit, by answer in effect admit the essential allegations of fact, but deny the conclusions of right and remedy set up in the bill of complaint.

Defendant county commissioners moved to dismiss the bill of complaint on grounds that in effect challenge the sufficiency of the allegations to warrant the relief prayed.

The defendant tax assessor filed an answer and motion to dismiss containing comprehensive averments going to the merits of the controversy as made by the bill of complaint, which averments it may not be necessary to set out at length.

The court dismissed the bill of complaint and plaintiff appealed.

After bonds were issued by the taxing units under laws requiring taxes to be levied annually upon the taxable property in the taxing units, sufficient to pay the interest and principal of the bonds as covenanted under the law, an amendment to the Constitution of the State was adopted in 1934 providing that:

"There shall be exempted from all taxation, other than special assessments for benefits, to every head of a family who is citizen of and resides in the State of Florida, the

homestead as defined in Article X of the Constitution of the State of Florida, up to the valuation of $5,000.00; provided, however, that the title to said homestead may be vested in such head of a family or in his lawful wife residing upon such homestead or in both." Sec. 7, Art. X, Constitution.

It does not appear that homesteads were exempted from taxation for "municipal, educational, literary, scientific, religious or charitable purposes."

It has been held that under the contract clause of the Federal Constitution the quoted State organic amendment cannot legally operate to exempt homesteads from taxation to pay bonded indebtedness of the taxing units in the State incurred prior to the ordained exemption from taxation, when the statutes under which the bonds were issued required the annual levy of taxes on the taxable property in the taxing units sufficient to pay the interest and principal of the bonds duly issued, according to the covenants of the bonds as authorized by law, the Constitution indicating what property shall be taxable; since to permit the homesteads to be so exempted from taxation to pay the bonds and interest, where under the Constitution and the statutes the homesteads were made subject to such taxation when the bonds were issued, would violate the provision of the paramount Federal Constitution that "no State shall pass any law impairing the obligation of contracts"; though the State organic exemptions of homestead from taxation would control as to taxes for other purposes such as the operation of governmental functions, future bond issues, or other purposes not controlled by dominant law. See Gray v. Moss, 115 Fla. 701, 156 So. 262; State, ex rel. Long, v. Carey, 121 Fla. 515, 164 So. 199; Boatright v. City of Jacksonville, 117 Fla. 477, 158 So. 42; Folks v. Marion Conuty, 121 Fla. 17, 163 So. 298; State, ex rel., v. Port of Palm Beach Dist.,

121 Fla. 476, 164 So. 851; State, *ex rel.,* v. Boring, 121 Fla. 781, 164 So. 859; State, *ex rel.,* v. City of Daytona Beach, 118 Fla. 773, 160 So. 501; Fleming v. Turner, 122 Fla. 200, 165 So. 253.

Counsel for appellant states the "question involved" here to be:

"Whether or not the Board of County Commissioners of Duval County, Florida, will be required by mandatory injunction to fix a sufficient rate of millage, which calculated upon the non-exempt property in said County, will produce sufficient funds to pay the interest and provide the sinking fund for County bonds and for School District bonds.

"The lower court answered this question in the negative by dismissing the bill of complaint."

Counsel for the appellee county commissioners state in their brief that:

"The ultimate question raised in the case at bar is whether * * * homesteads can be exempted from service taxes."

The essential question to be determined is whether, on the pertinent facts appearing by the transcript of the record on this appeal and in view of the paramount Federal organic provision that no State shall pass any law impairing the obligation of contracts, the taxing officials can be legally required to omit an assessment of a proper amount of taxes upon the now exempt homestead property to pay the pre-existing bonded indebtedness of the taxing units in common with non-exempt property, and also whether the taxing officials can legally be required to assess the entire amount necessary for bond payments against the non-exempt property of the taxing units, the State not having provided funds to be used in lieu of the tax that should otherwise be levied upon the homesteads which are now exempted from all taxation except special assessments for

benefits, subject to controlling provisions of the Federal Constitution.

A sovereign State has inherent legislative power to determine the subjects of taxation for general or for particular public purposes, and to make appropriate changes in the selections and classifications of the properties made subject to or exempted from taxation for general or particular public purposes. But such inherent power of the State is subject to controlling express or implied provisions of the State organic law and to the applicable paramount provisions of the Federal Constitution, including the contract clause.

Where an amendment to the State Constitution exempts from taxation property that was theretofore required to be assessed for taxation, such State organic exemption from taxation is controlling and the property so exempted is not subject to taxation, unless and to the extent that the exemption if allowed would violate the contract clause or any other dominant provision of the Federal Constitution.

The Constitution of 1885 originally provided and now provides:

"The Legislature shall provide for a uniform and equal rate of taxation, * * * and shall prescribe such rules and regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes." Sec. 1, Art. IX.

The above organic provision clearly indicates what shall be considered the taxable property in the State; and when a statute authorizes the levy of taxes against the *taxable* property or aginst the property in a taxing unit, the property referred to in the organic section is meant, unless a

less comprehensive inclusion of property to be taxed is stated in the Act.

There are other organic provisions relating to taxation and exemptions from taxation, but they are not involved in this litigation.

Where county or district or municipal bonds have been issued pursuant to valid statutes which require the annual levy, assessment and collection of taxes upon the *taxable* property in the taxing unit, sufficient to pay the bonds as covenanted under legal authority, the *taxable* property referred to is that indicated by the Constitution as being the taxable property in the State. When the bonds in this case were issued the *Constitution* required the taxation of "all property, both real and personal, excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes." A subsequently adopted State organic provision exempting from taxation homesteads constituting material portions of the property that was by the statute required to be assessed for taxation to pay the bonds when they were issued and sold, may be violative of the Federal organic provision that "no State shall * * * pass any * * * law impairing the obligation of contracts," Article II, Section 10, Paragraph 1, unless perhaps the State specifically provides for ample funds that are actually furnished at the times and in the amounts necessary to take the place of tax collections upon homesteads that were, prior to the change in the law, required by the statute to be levied and collected to pay the bonds and interest thereon as provided by the laws under which the bonds were issued. The statutory bond contract requiring tax assessments to pay the bonds upon the taxable property in the taxing unit, has reference to the taxable property at the date the bonds were issued and sold.

In this case the (in one of the bond issues Sec. 17, Art. XII, of the Constitution, in other issues, the statutes) requires the taxable property of the taxing unit to be assessed for taxation to pay the bonds and interest as they mature, and the Constitution states what property shall be taxed and what shall be exempt. A subsequent amendment to the State Constitution exempts homestead property which was theretofore required by the Constitution and statutes to be taxed, and the subsequent organic exemption from taxation is legally operative as to all taxation except for the payment of public bonded obligations incurred before the State organic exemption from taxation was adopted, for the payment of which bonds the law authorizing the bonds to be issued required a tax to be annually levied and collected upon the taxable property of the unit, as the Constitution then defined the taxable property. The State has not provided funds in lieu of the taxes that should otherwise be collected for bonded debt purposes on the property subsequently exempted from taxation subject to the paramount Federal law securing contract rights. In such cases the tax assessing officers will not be required to assess only the non-exempt property to pay the whole of the bonded debt, and to omit assessing the property now exempted from other taxation, but not exempt from taxation for the bonded debt, where a valid statute does not so require after funds are duly supplied in lieu of taxes which the law, at the time the bonds were issued and sold, required to be assessed upon the newly exempted property for debt purposes.

The Constitution states what property shall be taxed and what property may be exempted by law, and when the bonds were issued the law required the assessment of the taxable property for bond payment purposes. The newly exempted homestead property as well as non-exempt prop-

erty was taxable and subject to taxation when the bonds were issued and such homestead property continues to be taxable proportionately for such bonded debt purposes, until otherwise lawfully provided by law, or the debt is satisfied; therefore such homestead property should be so assessed for such purposes, in the absence of a valid law providing otherwise.

The statutes of the State make no provision for funds to take the place of proper tax collections from exempted homesteads to pay bonded debts for the payment of which the homesteads are not legally exempt; and the statutes do not expressly authorize the non-assessment of homesteads for bonded debt purposes existing when the exemption of homesteads from taxation was adopted. Nor do the statutes expressly authorize the whole of the taxes necessary to pay the bonded debts to be assessed against non-exempt property if that may legally be done without the acquiescence of those whose property rights are directly affected or without satisfying their rights in the premises. See Duval County v. Jannings, 121 Fla. 584, 164 So. 356.

Implications contrary to organic law should not be adjudged. Chapter 17060, Acts 1935, does provide generally for tax assessments allowing exemptions of homesteads from taxation, but the statute itself provides that if any part of it is held to be void or ineffective because it is repugnant "to the Constitution or otherwise, the remainder of the Act shall not be affected thereby, but shall remain in force so as to effectuate as nearly as possible the purpose and intent of this Act." Sec. 10, Chapt. 17060. The statute, as does the exemption amendment to the Constitution, intends to provide for exemptions of homesteads from taxation only as may legally be done under the dominant organic law. The Act should be so interpreted as to

make it accord with the paramount provisions of the Federal Constitution that are applicable thereto. The Federal Constitution, by its supreme force and legal effect, makes the statute subject to the dominant organic provision that no State shall pass any law impairing the obligation of contracts.

In Arkansas Southern Railway v. Louisiana & Arkansas Railway, 218 U. S. 431, "a tax of five mills to run for a term of ten years from the completion of the road was voted by a majority of the taxpayers in number and amount of Winn parish in favor of" a railroad company, the tax to begin in the future upon a contingency. Louisiana & Arkansas Ry. Co. v. Shaw, 121 La. 997, 46 So. 994. Subsequently, and before the tax was due to be levied, the Constitution exempted from taxation certain railroad property. It does not appear that the tax to be levied in the future was to be upon the taxable property as then defined by the Constitution. In that case the tax was not to pay bonds. issued by the taxing unit under a law expressly requiring the annual assessment of taxes to begin at once upon the taxable property in the taxing unit *sufficient to pay the bonds* and interest thereon as is required by the law authorizing the bonds to be issued in this case. It was merely a tax voted as a bonus of *no stated amount* to a railroad company, not to pay for money borrowed. On the facts of that case the Federal Supreme Court held:

"A vote by a parish to pay five mills on all the taxable property within its boundaries refers on its face to a determination by the sovereign as to what that property shall be."

There was no clear violation of the obligation of a contract in that case.

It is not necessary to discuss contentions that the non-assessment of homesteads for bonded debt existing when the organic homestead exemption amendment was adopted is a denial of due process of law and of the equal protection of the laws to the defendant bondholder or to the defendant non-exempt property owner; or to elaborate on other matters referred to in the very able briefs of counsel.

Affirmed.

ELLIS, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.