QUESTION: What effect, if any, does Ch. 74-264, Laws of Florida, have upon the taxability of all property, including homestead exemption, in a municipality for support of that city's general obligation refunding bonds which refunded original bonds issued prior to the adoption in 1934 of Art. X, s. 7, State Const. 1885?
SUMMARY: Ch. 74-264, Laws of Fla. (s. 196.032, F.S.), does not compel a municipal obligor to substitute appropriated replacement funds for the levy of property taxes previously pledged to the payment of bonds the obligation of which would be impaired by such substitution. Bonds issued by the state and various political subdivisions pledging taxes against all property then taxable have been consistently recognized as valid contracts protected by the state and federal constitutions against impairment of the covenantal obligation. State v. Citrus, 157 So. 4 (Fla. 1934); Long v. St. John, 170 So. 317 (Fla. 1936); Art. I, s. 10, State Const.; Art. I, s. 10, U.S. Const. The effect of earlier laws granting homestead exemption has also been delayed because of a prior pledge of the tax revenue. Yowell v. Rogers, 175 So. 772
(Fla. 1937); State v. Gulfport, 189 So. 703 (Fla. 1939); State ex rel. Harrington v. Daytona Beach, 160 So. 501 (Fla. 1935). Refunded issues carry forward the rights of the original obligations. [See] 31 Fla. Jur. Taxation s. 381 (1974). In so curtailing the effect of an exemption law, the courts have of course required that there be an "impairment of the contractual obligation." Long v. St. John, supra, at 321. State v. Carey,164 So. 199 (Fla. 1935). The court in Long held that an impairment would occur if the state had "not provided funds in lieu of the taxes that should otherwise be collected." Ibid., at 321. The controlling principle appears to be well established to the effect that the continued collection of revenues, to the full extent legally pledged, is a "contractually secured obligation that cannot be impaired . . . so long as the bonds remain unpaid, unless ultimate payment of the bonds and interest be actually secured by some special fund set aside for the sole benefit of the bondholders and adequate to satisfy their demands" without qualification. Duval County v. Jennings, 164 So. 356, 358, (Fla. 1935); State v. City of Daytona Beach, supra, at 505. Later cases collected, 26 Fla. Jur. Public Securities and Obligations ss. 162-168. The law presently in question has provided for a replacement fund and trust fund in s. 196.032(1) and (2), F.S. (1974 Supp.), as follows: (1) There is created the Local Government Additional Homestead Exemption Trust Fund. . . .
(2) Each qualified county, municipality, or special district is entitled to receive an annual payment from the fund in an amount equal to the revenue lost as a result of the additional exemptions provided in s. 196.031(3). Revenue lost shall be calculated by multiplying 96 percent of the additional exemption granted in s.196.031(3) by applicable millage. . . . (Emphasis supplied.) The statute defines a "qualified local government" as one which filed an application with the Department of Revenue not later than December 1, or participated in the distribution from the fund the preceding year and has levied an ad valorem tax for the current year. Section 196.032(2)(a) and (b). The Department of Revenue may make payments from a trust fund on a prorated basis if it deems the balance in the fund insufficient to make projected payments. Section 196.032(3)(a). Should there be a deficit in the trust fund, provisions are made whereby any qualified local government receiving payments from the trust fund in a lesser amount than that finally determined as the revenue lost from that year's tax levy as a result of the additional homestead tax exemptions shall be entitled to any such deficiency payments on a first priority basis from the next year's distribution from the trust fund, as soon as funds are available for such purposes. Section 196.032(5). In the absence of an express provision in the statute that the extended exemption shall apply to and prevent the levy of bond millage previously pledged, and, based upon your statement that such a result would have sufficient impact to "seriously affect and impair this city's obligations under its contractual covenants with its bond holders," I would not construe the law to compel substitution of funds subject to annual appropriation and other conditions stated above in place of property tax revenues previously pledged. Even ignoring the problem of gauging equivalence of the appropriation in question and the uncertainty of future annual appropriations, the view of our court quoted above has been that a public obligor may not stop collection of pledged revenues until ultimate payment of the total principal and interest ultimately due is secured by funds actually set aside for that sole purpose, without qualification. Duval County v. Jennings, supra, at 358. While no definitive determination of the scope and effect of a pledge of such revenues can be made without a review of the terms of the particular agreement under which bonds have been issued, I believe the principles and decisions above noted permit continued levy of bond millage against homestead properties under the circumstances you describe, pending any contrary adjudication on the impairment issue.