381 So.2d 1101 (1979)
DEPARTMENT OF REVENUE of the State of Florida, Appellant,
v.
William MARKHAM, As Broward County Property Appraiser, et al., Appellee.
No. MM-314.
District Court of Appeal of Florida, First District.
November 5, 1979.
*1102 E. Wilson Crump, II, Asst. Atty. Gen., Jim Smith, Atty. Gen., for appellant.
Gaylord A. Wood, Jr., Fort Lauderdale, James R. Rich, of Christiansen, Jacknin & Myers, Palm Beach, for appellee.
LARRY G. SMITH, Judge.
The question presented in this case is whether "household goods" as currently defined in the Florida Statutes[1] owned by nonresidents but not held for commercial *1103 purposes or resale, are subject to ad valorem taxation under Florida's tax laws. The trial judge determined that such property is not taxable, and the Department of Revenue appeals that ruling. We affirm the trial judge.
Suit was filed by appellee William Markham, as property appraiser for Broward County (as well as individually and as a taxpayer of Broward County), seeking a declaratory judgment as to whether or not household goods and personal effects of nonresidents are subject to ad valorem taxation. Appellee David L. Reid, as property appraiser for Palm Beach County, was allowed to intervene in the action as a party plaintiff. In 1967 Markham's predecessor in office included in the tax roll household goods or furnishings, personal effects, and wearing apparel. The inclusion of such property was found to be error by the Auditor General under the authority of Attorney General's Opinion 068-59, dated April 10, 1968.[2] Subsequently, on October 12, 1976, the Department enacted Rule 12D-7.02, Florida Administrative Code, which provided in part that household goods and personal effects belonging to persons not residing and making their permanent home in Florida are taxable, not exempt. Another opinion from the Attorney General, AGO 077-128, was issued on December 8, 1977, ruling that household goods and personal effects of nonresidents are taxable. Both Markham and Reid alleged uncertainty as to the existence or nonexistence of certain rights, status, immunities, power or privileges with respect to the matters set forth in the complaint. Markham's complaint alleged doubt concerning the Department's failure to distribute forms for the purpose of making application for exemption of household goods, if taxable; he also questioned whether Florida residents must annually apply for exemption of such goods, or have the same taxed; and he further expressed doubts concerning whether a return of such property is required to be filed by the taxpayer, and whether property owned by a condominium association is entitled to exemption as to such property. In addition to the doubts and uncertainties created by the conflicting interpretations of the statutes, Markham's affidavit in support of his motion for summary judgment discloses another and most practical reason for his concern. That is, that in order to properly assess the household goods and personal effects of nonresidents, Markham estimated the addition of approximately 12 people to his staff would be required, and he further determined that the estimated revenues to be received from taxation of such property of nonresidents would be far outweighed by the costs of administration and assessment.[3] We conclude, as did the trial judge, that the plaintiffs have standing to maintain the suit. Reid v. Kirk, 257 So.2d 3 (Fla. 1972). If the Department's rule requiring assessment and taxation of household goods and personal effects of nonresidents is without statutory basis, it is invalid, and should be eliminated from consideration by the taxing officials. See Department of Revenue v. Young American Builders, 358 So.2d 1096 (Fla. 1st DCA 1978).[4]
*1104 Under the Department's view (somewhat over-simplified) the taxing formula reads: "household goods" constitute "personal property" for purposes of ad valorem taxation (Section 192.001(11)(a) Florida Statutes); unless "expressly exempted from taxation" all "personal property" in the State is taxable (Section 196.011, Florida Statutes); and the only express exemption of household goods and personal effects applies to persons "residing and making his or her permanent home" in Florida (Section 196.181, Florida Statutes 1977).
In answer to the Department's views we have the benefit of appellees' briefs and arguments, and the well reasoned opinion and judgment of the trial judge, which together set forth an explanation and interpretation of the statutes which we believe is correct. Briefly, the position of the property appraisers (appellees) is that by enactment of Chapter 67-377, Laws of Florida 1967, excluding "household furnishings, wearing apparel, and effects of the person" (used for the comfort of the owner and not for commercial purposes), from the definition of "tangible personal property" (Section 200.01, Florida Statutes 1965), and by repeal of the statutory provisions relating to the method of valuation and filing of returns for such items of property (Sections 200.08(2), (3), Florida Statutes 1965 (repealed by Chapter 67-377)), the 1967 Legislature effectively excluded household goods and personal effects from the personal property ad valorem taxation laws of Florida, without regard to residency of the owner. And further, that Chapter 70-243, Laws of Florida 1970, which added a definitional section (Section 192.001, Florida Statutes 1970, Supp.), and defined "household goods" as a category of "personal property", was simply a "technical amendments" act that made no substantive change in the law relating to such property.
As mentioned above, Chapter 67-377 provided in part for the exclusion of household goods and personal effects (used for the comfort of the owner and not held for commercial purposes) from the definition of "tangible personal property" under Section 200.01, Florida Statutes. In the same session, however, the legislature also enacted Chapter 67-378, amending Section 192.201, Florida Statutes 1965 (exempting household goods and personal effects of Florida residents up to $1,000.00), by moving the $1,000.00 limitation contained in the 1965 statute.[5] If Chapter 67-377 eliminated household goods and personal effects from taxation, then Chapter 67-378, exempting such property as to Florida residents only, would appear to be redundant. We must construe statutory provisions so as to harmonize and reconcile them, and conflicting statutes should be construed so as to give effect to what appears to have been the primary legislative intention. See 30 Florida Jurisprudence  "Statutes", § 119.

I.
We must begin with consideration of Section 200.08, Florida Statutes 1965, which governed the filing of tangible personal property tax returns. Subsection (2) deals with "household furnishings, wearing apparel, and effects of the person" actually being used and serving the creature comforts of the owner. That provision recognized such articles as falling within a special category of property, the true cash value of which was uncertain and speculative, and which therefore justified a different method of valuation and return for tax *1105 purposes than did other property. It also eliminated the requirement that the return be under oath as to such property. Subsection (3) made the filing of a return of household goods and personal effects "directory only", and not "mandatory"; and it further provided that the failure to file such a return would in no way affect the right of a taxpayer to object to a tax assessment, seek a review of that assessment, or to obtain homestead tax exemption or any other right. It is clear that household goods and personal effects were taxable as "tangible personal property" under the 1965 statutes. It may be observed that these provisions reflect a recognition of the special difficulties and problems involved in taxation of this type of property, as well as an intent to lessen the burdens of the taxpayer in connection with its return and taxation. We think these factors have a significant bearing upon the decision of the 1967 Legislature to eliminate such property from consideration for tax purposes.
Prior to the 1967 amendment, Section 200.01, Florida Statutes 1965, excluded only "motor vehicles" from the category of "tangible personal property". As amended (by Chapter 67-377), Section 200.01, Florida Statutes 1967, read as follows:
"200.01 Definition of Tangible Personal Property.  (1) `Tangible personal property' shall include all goods, chattels, vehicles (except motor vehicles and household furnishings, wearing apparel, effects of the person actually employed in the use of serving the creature comforts of the owner and not held for commercial purposes), animals and other articles of value capable of manual possession and whose chief value shall consist of the thing itself and not what it represents. The words `personal property,' as used in this chapter, shall be synonymous with tangible personal property." (Florida Statutes 1967)
It is well to notice, again, that the same act, Chapter 67-377, repealed subsections (2) and (3) of Section 200.08, Florida Statutes 1965. These subsections, as previously noted, dealt with the special standards of valuation and somewhat relaxed requirements for the return and assessment of such property for tax purposes. We conclude, as did the trial judge, that after the passage of Chapter 67-377, household goods and personal effects, used for the comfort of the owner and not held for commercial purposes, were effectively eliminated from the operation of the taxing statutes, regardless of residency of the owner.[6]
We have not overlooked the fact that both before and after the passage of Chapter 67-377 other general provisions existed and remained in the statutes indicating, as appellant argues, a conclusion contrary to the one we reach from our examination of the statutes. Specifically, Sections 192.01 and 192.03 remained unchanged in the 1965 and 1967 Florida Statutes. These provisions were as follows:
"192.01 Property subject to taxation.  Unless expressly exempted from taxation, all real and personal property in this state, and all personal property belonging to persons residing in this state, shall be subject to taxation in the manner provided by law." (Florida Statutes 1965, 1967).
"192.03 Personal property defined.  For the purpose of taxation `personal property' shall be construed to include all goods and chattels, money and effects, debts due or to become due from solvent debtors whether on account, contract, note or otherwise, and all public stocks or shares in incorporated or unincorporated companies." (Florida Statutes 1965, 1967).
We conclude that the above statutory provisions which in 1965 and 1967 were included in Chapter 192 of the Florida Statutes entitled "Taxation, General Provisions", were modified in their operation and effect by *1106 the adoption of Chapter 67-377 (amending Section 200.01, Florida Statutes 1965) which excluded household furnishings, wearing apparel and personal effects, from "tangible personal property". We think no other reasonable conclusion is possible from examination of the entire body of statutes comprising the taxation laws of the State. Examination of Chapter 200 (Florida Statutes 1967) discloses that it deals in a comprehensive fashion with the manner and means by which all taxable tangible personal property shall be returned and assessed, as well as when and how the taxes shall be paid and collected. Throughout the entire Chapter it is clear that its provisions relate only to "tangible personal property", and it has not been suggested to us how this court can read back into the statutes language which would require the taxation of household goods and personal effects, which the 1967 Legislature expressly excluded from the operation of these statutes. By contrast, it is noted that specific provisions were retained with respect to the taxation of "inventory" (Section 200.08(2), Florida Statutes 1967), so that "inventory" without question remained subject to taxation.
We find it highly implausible that the legislature intended to create a separate taxable category of property, i.e., household goods and personal effects used for the creature comforts of the owner, while at the same time it repealed the basic operative provisions of the taxing statutes which would be necessary in order to provide for the return, valuation, and the assessment, payment and collection of taxes on such property.
The obvious confusion being encountered by those having the responsibility of interpreting and executing these tax provisions can be traced, it seems to us, to the process of transferring statutory provisions from one Chapter of the Florida Statutes to another, without adequately taking into account in the process changes in substance, or conflicts, inadvertently created thereby. We think this is what occurred here. The 1967 amendment to Section 200.01 excluding household goods from the definition of "tangible personal property", was made within the confines of Chapter 200, the only chapter containing procedures for the assessment and collection of taxes on tangible personal property. The amended definition itself concludes with the sentence, "The words `personal property', as used in this Chapter, shall be synonymous with tangible personal property". There is no question but that under this amendment, personal property consisting of household furnishings, wearing apparel and personal effects (unless used for commercial purposes) could not be considered as "tangible personal property" requiring the filing of a return and payment of taxes.

II.
Then, in 1969, the Legislature enacted a "revisor's bill", Chapter 69-102, Laws of Florida 1969, which purported to correct, reorganize, renumber and clarify the statutes dealing with ad valorem taxation. This act transferred the language of Section 200.01, Florida Statutes 1967, to Chapter 192, "Taxation, General Provisions"; it also gave this section a new number, 192.052; and in addition, it amended the section be deleting the last sentence. These changes can best be visualized by reference to the language of the enactment itself, as well as the revisor's note following the amendment, as follows:
"Section 1. Section 200.01, Florida Statutes, shall be amended and renumbered as follows:
"192.052 Tangible personal property defined. [(1)] `Tangible personal property' shall include all goods, chattels, vehicles (except motor vehicles and household furnishings, wearing apparel, effects of the person actually employed in the use of serving the creature comforts of the owner and not held for commercial purposes), animals and other articles of value capable of manual possession and whose chief value shall consist of the thing itself and not what it represents. [the words `personal property,' as used in this chapter shall be synonymous with tangible personal property.] (Chapter 69-102, Laws of Florida 1969).
* * * * * *
*1107 "Revisor's Note: The sections constituting the separate chapter on tangible personal property have been integrated into the entire ad valorem code at logical location. Therefore, the deleted reference to `this chapter' no longer has significance. Furthermore, in general application `tangible personal property' and the broader term `personal property' do not always have the same meaning. Subsection (2) has been omitted because it is no longer of value in the statute books. * * *" (Chapter 69-102, Laws of Florida 1969).
As above demonstrated, the provision defining "tangible personal property", which formerly appeared as the opening paragraph of the Chapter dealing with the "mechanics" of the taxing statutes (Chapter 200), was relocated and placed among the general taxing provisions (Chapter 192). We think it is obvious that the specific statutory provisions (Section 200.01, Florida Statutes 1967) control over the general (Sections 192.01, 192.03, Florida Statutes 1967)[7], and that the apparent conflict between the two in this instance became more pronounced by virtue of the statutory revision (Chapter 69-102, Laws of Florida 1969) renumbering and changing the location of Section 200.01. The difficulty was also somewhat compounded, it appears to us, by the revisor's deletion of the sentence which made it clear that the words "personal property" would be synonymous with "tangible personal property", as used in that Chapter.
Given step one, which it appears to us was the 1969 transfer, renumbering and amending of Section 200.01, Florida Statutes 1967, we can readily understand how step two occurred. Step two, we find, was the enactment in 1970 of Chapter 70-243, yet another attempt at redefining, simplifying and reorganizing statutory provisions relating to ad valorem taxation. Under this revision[8] "personal property" was separated into the "four categories"[9] of (a) "Household goods"; (b) "Intangible personal property"; (c) "Inventory"; and (d) "Tangible personal property". The trial judge determined, and we agree, that this "revisor's bill" was a technical amendments act, not intended to work substantive changes in the tax law. This is obvious from the committee comment appearing as the last paragraph of that section of the amendment, as follows:
"Committee Comment  This section is a comprehensive definition section including definitions previously found in sections 192.031, 192.042, 192.052, 192.064, and 193.511, and opinions of the Florida supreme court. It also includes definitions of terms frequently used in these statutes which have not been previously defined so that laymen in the field of taxation will have a clearer understanding of the statutes." (Chapter 70-243, Laws of Florida 1970, Section 1).
The Department's position (that this amendment created a fourth category of taxable personal property, i.e. "household goods") simply cannot be reconciled with other provisions of the taxing statutes, as amended by the same enactment (Chapter 70-243), which we think clearly negate this construction. These other provisions have been retained and appear under the same numbers in the 1977 Statutes. Section 192.032, Florida Statutes 1977, contains essential provisions with respect to the situs of property for assessment purposes. Specific provisions are included for real property, tangible personal property, inventory and intangible personal property, in separate subsections. There is conspicuously absent from this section any reference whatever to household goods and personal effects. Again, Section 192.042 Florida Statutes 1977, contains essential provisions with respect *1108 to the assessment and valuation date of property. The categories specified are real property, tangible personal property, inventory, and intangible personal property. There is no mention of household goods and personal effects.[10] Section 193.052 contains essential provisions relating to the preparation and filing of returns. The categories are tangible personal property, inventory, and other property specifically required to be returned. Again, there is no mention of household goods and personal effects.[11]
Appellants refer us to Section 193.114, Florida Statutes 1977, dealing with preparation of assessment rolls. Subsection (1)(b) provides for a tangible personal property assessment roll which shall include "inventory, taxable household goods, and all other taxable tangible personal property" (emphasis supplied). We conclude that the reference to "taxable household goods", which was added by Chapter 70-243, Laws of Florida 1970, must be read in connection with the definitions of "household goods", and "tangible personal property", under Section 192.001(11). So considered, "taxable household goods" would cover only property of that category not ordinarily found in the home and used for the comfort of the owner and his family, or which are held for commercial purposes or resale. (Section 192.001(11)(a), Florida Statutes 1977).
Our tracing of the applicable statutory language from 1965 to date fails to convince us that the legislature intended to create a separate taxable category of "household goods", as argued by the Department, when such goods are used for the comfort of the owner and his family, and not held for commercial purposes or resale. The exclusion of such items in 1967 by eliminating them from the definition of "tangible personal property", under which category they had been taxable in prior years, and the repeal of the statutes requiring a return and prescribing guidelines for valuation, appears to us to have been deliberate, not accidental; whereas, the form and content of the present statutes, as a result of nonsubstantive revisions, in so far as they tend to lead to the opposite conclusion, seems to us to be the result of accident, rather than deliberate legislative action.

III.
We have thus far not dealt fully with one of appellant's primary contentions. That is, that acceptance of appellees' construction of the statutes leads to irreconcilable conflict with the household goods exemption statute, now found in Section 196.181 Florida Statutes 1977. We concede that it may appear that the 1967 legislature did not act in a completely orderly and comprehensible fashion when it simultaneously eliminated household goods from taxation in Chapter 67-377, and in the same session enacted Chapter 67-378 amending the law granting an exemption as to such goods belonging to state residents only. In our preceding analysis we have been guided by the rule requiring us to determine the "primary legislative intent" (30 Florida Jurisprudence  "Statutes", § 119). It is entirely possible that the apparent conflict may have been due to inadvertence. However, appellees have offered another explanation of this apparent inconsistency in the form of an affidavit from Honorable T. Terrell Sessums, former member of the House of Representatives of the State of Florida, with service during the 1967 legislative *1109 session. In his affidavit, Mr. Sessums recites that he introduced House Bill HB 826, which became law as Chapter 67-377. The affidavit further recites that he had been approached by persons, including tax assessors, who advised him of the extreme difficulty in valuation of household goods and personal effects; that the valuation of that type of property was extremely subjective; and that the cost of making the assessments would outweigh the tax revenues to be derived therefrom.[12] He further deposed that he worked closely with the office of the Comptroller, which at that time had supervision over the various tax assessors and the assessment of property in Florida, and was advised by the Comptroller's office that they could see nothing wrong with the idea of defining "tangible personal property" so as to make "household goods and personal effects" not taxable, no matter by whom they were owned. He further stated in his affidavit that another act, House Bill HB-824, which became law as Chapter 67-378, was prepared for him, and that his intention with respect to that bill was that it would be "standby" legislation, to be effective to provide for exemption of the household goods and personal effects of all persons residing in Florida in the event and only if in the future such goods were legislatively declared taxable, and to expand the class of persons entitled to the exemption beyond that stated in the constitution, to include unmarried persons and persons who were not head of a family.[13] Appellant's motion to strike this affidavit was denied by the trial court, who stated his reasons for the denial in the final judgment. The trial judge drew a distinction between statements of a member of the legislature concerning legislative intent, which should not be considered in determining legislative intent, and statements of the author or prime sponsor of a bill concerning the evils sought to be addressed by that bill, which can be considered for what they are worth. However, the trial judge further stated that the two legislative acts in question are "sufficiently clear to avoid the need for extrinsic aids to their construction". Under this ruling of the trial court, we conclude the weight, if any, given to Mr. Sessum's affidavit was minimal, and that the error, if any, in failing to strike the affidavit does not warrant reversal.

IV.
We are urged by the Department to reverse the judgment appealed from upon the grounds that affirmance requires an interpretation of the taxing statutes that offends controlling constitutional provisions. They argue, fundamentally and correctly, that all property is subject to taxation unless expressly exempt. Art. 7, §§ 2, 4, Fla. Const. (1968); Volusia County v. Daytona Beach Racing, etc., 341 So.2d 498 (Fla. 1976), appeal dismissed 434 U.S. 804, 98 S.Ct. 32, 54 L.Ed.2d 61, Am. Fi. Inv. Corp. v. Kinney, 360 So.2d 415 (Fla. 1978); Archer v. Marshall, 355 So.2d 781 (Fla. 1978); Lanier v. Tyson, 147 So.2d 365 (Fla. 1963).
The constitutional validity of the statutes in question has not been challenged by either side in this controversy, and we consider that the trial court disposed of the case on other than constitutional grounds, as we do. It is well settled that the courts will not pass upon the constitutionality of statutes if the case in which the question arises may be effectively disposed of on other grounds. 10 Fla.Jur.2d, "Constitutional Law", § 55. Further, a statute should be construed, if possible, not only to avoid a conclusion that it is unconstitutional, but also to avoid grave doubts on that score. 30 Fla.Jur., "Statutes", § 76. Therefore, this court's task, under the circumstances, is to interpret the statutes in accordance with the legislative intent. In so *1110 doing, to the extent that the legislative intent is in doubt, or if the statutes are so ambiguous as to render legislative intent questionable or unclear, it is the duty of the taxing authority and the court to construe them liberally in favor of the taxpayer and strictly against the taxing authority. Department of Revenue v. Brookwood Associates, Ltd., 324 So.2d 184 (Fla. 1st DCA 1975). The courts indulge the further presumption that, if any state of facts can be conceived of which would sustain the reasonableness and validity of an act of the legislature, such state of facts exists and justifies the enactment. Ex Parte Lewis, 101 Fla. 624, 135 So. 147 (Fla. 1931).
We proceed, under the above authorities, upon the assumption that the statutes in question meet the test of constitutionality. In response to the Department's argument we note that Article 7, Section 1(a), Florida Constitution (1968), provides that "No tax shall be levied except in pursuance of law". It is a well settled general principle that the State, as an incident of its sovereignty, has the inherent legislative power to select the subjects of taxation and to provide for exemption from taxation, subject only to controlling constitutional limitations. Long v. St. John, 126 Fla. 1, 170 So. 317, 109 A.L.R. 809 (1936); State ex rel. Green v. City of Pensacola, 126 So.2d 566 (Fla. 1961); Belcher Oil Co. v. Dade County, 271 So.2d 118 (Fla. 1972); Williams v. Jones, 326 So.2d 425 (Fla. 1975), appeal dismissed 97 S.Ct. 34, 429 U.S. 803, 50 L.Ed.2d 63. This general principle has been applied, in the cases cited, primarily in aid of a finding of tax liability, rather than nonliability. But the principle is just as valid, in our opinion, when applied to legislation specifying what is not taxable.
The history of the exemption statute (Section 196.181, Florida Statutes 1977), and the "definitions" statute (Section 192.001(11)(a), (d), Florida Statutes 1977), shows that over a period of many years the Florida Legislature has dealt (without challenge in the courts) with the particular category of household goods and personal effects as a unique species of property justifying special treatment for ad valorem tax purposes. The "literal" wording of the constitutional "exemption" provisions (Article IX, Section 11, Florida Constitution 1885; Article 7, Section 3(a), Florida Constitution 1968), has never before been interposed, so far as we have been able to determine, as an objection to what the legislature apparently has considered to be reasonable and necessary treatment of this class of property. For example, pre-1968, the constitution limited the exemption to $500.00, the legislature expanded it to $1,000.00; pre-1968 the constitution limited the exemption to the "head of the family", the legislature expanded this to "every person residing or making his or her permanent home" in Florida; pre-1968 the constitutional limit remained at $500.00, while the legislature expanded the amount to "total" exemption. The 1968 Constitution then "permitted" total exemption, but retained the limitation restricting the exemption to the "head of the family"; but the legislature continued to provide for exemption to the expanded class "every person" residing and making his or her permanent home in Florida.[14]
Given the above history and comparison of the statutes with the organic provisions of the Constitution, we think it is obvious that the legislature (and presumably the taxpayers and general public) has considered it within its power to provide for expansion of the exemption both with respect to the amount and the class of persons entitled to claim the benefit of it.[15] By logical extension of the same assumption we find that it was not unreasonable for the legislature to further extend the nontaxable status of household goods and personal effects, by providing for the exclusion *1111 of such property for tax purposes, whether owned by residents or nonresidents. Of course, since we are dealing with both an exemption statute, and an exclusionary or classification statute, we do not necessarily suppose that the public benefit or purpose sought to be accomplished was the same in each case. We do conclude, however, that there is adequate basis in the record before us to indicate that exclusion of such property from consideration by taxing officials and taxpayers alike serves a legitimate, though different, public purpose than the exemption statute, namely, the elimination of the useless expenditure of manpower and resources not justified by adequate return to the public treasury.[16] We also think it is not inconceivable to assume that once the legislature determined that the exemption conferred upon residents should be unlimited as to value,[17] it saw no reasonable distinction to be made between total absence of taxation with respect to household goods and personal effects of residents, and total absence of taxation of such property owned by nonresidents. Cf. Shevin v. Kahn, 273 So.2d 72 (Fla. 1973), affirmed on appeal Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189; Department of Revenue v. Amrep Corp., 358 So.2d 1343 (Fla. 1978).
For the foregoing reasons, the ruling of the trial court  determining that household goods consisting of wearing apparel, furniture, appliances and other items ordinarily found in the home and used for the comfort of the owner and his family, not held for commercial purposes or resale, are not subject to ad valorem taxation, whether owned by residents or nonresidents; and further, that so much of Rule 12D-7.02, Florida Administrative Code, as would require the taxation of household goods and personal effects of nonresidents is declared to be null and void  is approved.
The judgment and ruling of the trial court as to these matters is, accordingly, affirmed.
McCORD, Acting C.J., concurs.
ERVIN, J., dissents.
ERVIN, Judge, dissenting.
I cannot concur in the majority's opinion because in my view the property appraiser has failed to establish standing to question whether household goods and personal effects of non-residents are subject to ad valorem taxation. The majority's reliance on Reid v. Kirk, 257 So.2d 3 (Fla. 1972), is, I believe, without substantial foundation. While Reid permitted a tax assessor to bring a declaratory judgment action questioning the range of values set by the Department in his county, the court's opinion was carefully limited to the particular circumstances before it. The history of Reid involved four prior cases, all construing Section 192.31. The first, Burns v. Butscher, 187 So.2d 594 (Fla. 1966), another declaratory action, held that Section 192.31, Florida Statutes (1965), giving the comptroller general supervisory authority over assessment and valuation of property, was constitutional. The comptroller and cabinet instituted the suit to determine the extent of their power and control of assessment vis-a-vis the local tax assessors, the latter asserting the statute unconstitutionally usurped their powers. The relevant statement in Burns is as follows:
The comptroller with the approval of the Budget Commission is mandated to establish measurements of values, consistent with those fixed by the law, and these standards are declared to be prima facie evidence of just valuation. Any assessor refusing to adhere to them assumes the burden of overcoming the presumption of their merit. 187 So.2d at 595.
In DOR v. Bell, 227 So.2d 684 (Fla. 1st DCA 1969), the same statute was construed when ad valorem taxpayers challenged assessments of their pasture lands in the central and south Florida Flood Control District on grounds that assessments throughout *1112 the district were not uniform because DOR (in place of the governor and comptroller after reorganization) had failed in its statutory duties under Section 192.31, to supervise "assessments and valuations . . within the affected counties to see to it that all property ... valuations ... were uniform and equal." Bell, supra at 685. The trial court ordered DOR to make an official determination of the reasonable range of values of pasture lands in the district and to proceed to insure assessments in the district were within that range. This court affirmed.
This court agreed with the trial court in Reid v. Kirk, 245 So.2d 877 (Fla. 1st DCA 1971), that the plaintiff-appellant, tax assessor of Palm Beach County, had not brought forward an issue discernible as a declaratory judgment. The tax assessor had sought a declaratory statement that the range of values DOR had set for pasture lands in his county after DOR v. Bell, supra, were unfair because the maximum values were less than fair assessments in Palm Beach County. This court affirmed the trial court's dismissal of the action, stating that the tax assessor could not sue for declaratory judgment in his official capacity to "question the instructions promulgated by the Department of Revenue issued pursuant to the judgment of the trial court and the mandate of this Court in Department of Revenue v. Bell." 245 So.2d at 878. The tax assessor had shown no right or need for the declaration:
As a public officer it is his duty to obey the law. As an executive officer it is his duty to respect the judicial determination of the law. The decision of this Court and the directive of the Department of Revenue are in no way unclear... . As Tax Assessor [the plaintiff] can have no interest adverse to the law as construed by the Court and applied by his superior executive officers. 245 So.2d at 879.
The Supreme Court reversed, in Reid v. Kirk, supra, citing conflict with Burns v. Butscher, supra, and the construction of Section 192.31 in Burns, which held that the comptroller's measurements of value are only prima facie evidence of just valuation and that tax assessors challenging those measurements, as the tax assessor was in this case, assume "the burden of overcoming the presumption of their merit." Burns at 595. Discussing the lower court's opinions, the Supreme Court stated:
When the Leon County Circuit Court accepted the range of values contained in the directive arising out of the Bell litigation, it merely accepted that which is prima facie evidence under the statute. This acceptance did not foreclose Reid from challenging these measures as they applied specifically to his county, nor did it foreclose him from seeking to meet his burden of proof in a judicial forum. 257 So.2d at 5. (emphasis in original.)
Reid, then, does not stand for the proposition that tax assessors and DOR are in adverse positions regarding construction of the taxing statutes and/or DOR's regulations. The Supreme Court specifically stated: "[T]he Assessor [was] not challenging the validity of statutes applicable to him... ." 257 So.2d at 4. Instead, the statute and prior law gave the assessor standing on this particular issue: "Clearly an assessor is entitled by statute and case law to challenge the range of values he is instructed to use... ." Id. However, his standing goes only to challenging the range of values as they apply "specifically to his county." Id. The Supreme Court's opinion in Reid is thus not applicable to this case; although language in the trial court's opinion in Reid is.
The general rule of standing to seek a declaratory judgment is that a public official is allowed standing when "willing to perform his duties, but ... prevented from doing so by others." 257 So.2d at 4. Other relevant cases show that the Broward County tax assessor is not in such a position. For example, the mayor of Jacksonville sued the City Commission in a declaratory action to determine the parties' rights and powers of control over the Police Department in Alsop v. Pierce, 155 Fla. 185, 19 So.2d 799 (1944). The Commission had *1113 passed three regulations which the mayor asserted trenched "upon the authority granted him under the city charter" and which were allegedly unlawful attempts by the commission "to arrogate to itself power and jurisdiction ... vested exclusively by law in the office of mayor." 19 So.2d at 802. The mayor sued after a clash arose when he attempted to remove and replace officers on the vice squad. The complaint was justiciable under the act because the mayor alleged that the Commission's rules "so unlawfully impinge[d] upon his charter powers as to hamper and impede him in the performance of his official duties." 19 So.2d at 806. There is no comparable clash or uncertainty regarding DOR's jurisdiction or executive powers as opposed to those of the Broward County tax assessor.
In Ervin v. City of North Miami Beach, 66 So.2d 235 (Fla. 1953), the City took issue with an attorney general's opinion regarding its power to set speed limits on state and federal highways within municipal boundaries. The court stated that "the only issue  if it may be termed an issue  in this litigation is the question of whether the opinion of the Attorney General ... is correct. The real relief sought in this case is an Advisory Opinion of this Court construing a statute." 66 So.2d at 236. The court quoted Anderson on Declaratory Judgments:
[I]f the construction or validity of a statute or an ordinance is drawn in question, the courts will not entertain an action based thereon, seeking a determination as to either the construction or the validity thereof, where there is no controversy as to the violation of such statute or ordinance. In these circumstances there is no justiciable controversy. Id.
More recently, in Askew v. City of Ocala, 348 So.2d 308 (Fla. 1977), the City and the Marion County School Board brought declaratory actions to determine whether they were subject to the Government in the Sunshine Law when they met with their attorneys. The local state attorney had advised them that they were, and the attorney general had issued an opinion adverse them. The trial court dismissed the case for failure to state a cause of action. This court reinstated the action, and the Supreme Court reversed, citing direct conflict with Ervin v. City of North Miami Beach, supra: "As in Ervin ..., there exists between respondents and the named petitioners no present dispute... . It seems to us that respondents really seek judicial advice which is different from that advanced by the Attorney General and the state attorney... ." 348 So.2d at 310.
Rule 12D-7.02 was adopted pursuant to the authority delegated to the Department by the legislature, permitting it to prescribe reasonable rules and regulations for the assessing and collecting of taxes, and requiring also that such rules "shall be followed by the property appraisers." Section 195.027(1), Florida Statutes (1977). As in Askew v. City of Ocala, the tax assessor here does not claim that DOR's rule is unclear concerning his duties. Instead he disagrees with DOR's construction of the statute under which the rule was promulgated, arguing the statute's economic merits. However, the statute and the rule which the tax assessor challenges in this case does not place him and DOR in adverse positions, so that Reid v. Kirk, supra, is not applicable. However, the language of the trial court in that case does apply: "As Tax Assessor he can have no interest adverse to the law as construed by the Court and applied by his superior executive officers." 245 So.2d at 879. Clearly the Broward County tax assessor cannot assert that DOR's rule and interpretation of the statute in any way conflicts with his constitutional or statutory duties.
I would reverse.
NOTES
[1] "192.001 Definitions. 

* * * * * *
"(11) * * *
"(a) `Household goods' means wearing apparel, furniture, appliances, and other items ordinarily found in the home and used for the comfort of the owner and his family. Household goods are not held for commercial purposes or resale."
[2] The Department and the property appraisers, Markham and Reid, interpret the Attorney General's Opinion 068-59 differently. As we read the opinion, although it may not in all respects be responsive to the question asked, we find a rather clear declaration that the legislature, by enacting Chapter 67-377, amending Section 200.01, Florida Statutes 1967, intended to exclude household goods, wearing apparel and personal effects used for the comfort of the owner and not held for commercial purposes from the tangible personal property laws of the State, and "thereby exempt" such properties from ad valorem taxation.
[3] Attorney General's Opinion 068-59 (see footnote 2) contains the following paragraph reflecting this view: "There has been a contention by many, if not most, of the taxing officials for years that the cost and expense of assessing and collecting ad valorem taxes against household goods and personal effects probably equal or may exceed the actual taxes against household goods and personal effects. This has been used as an argument against the taxation of household goods and personal effects."
[4] Section 194.181(6), Florida Statutes 1977, provides: "In any suit in which the validity of any statute or regulation found in, or issued pursuant to, Chapters 192 through 197, inclusive, is contested, the public officer affected may be a party plaintiff."
[5] Article IX, Section 11, Florida Constitution (1885) provided for an exemption of household goods and personal effects for the benefit of the "head of the family" residing in Florida, but this exemption was limited to only $500.00. Therefore, Chapter 67-378 was, in part, a reenactment of Section 192.201, Florida Statutes (1965), under which the exemption extended to "every person residing and making his or her permanent home in [Florida]", to the extent of $1,000.00. The statute thus exceeded the specific authority granted under the 1885 Constitution both with respect to the class of persons to which the exemption applied, as well as the amount of the exemption. However, under Article 7, § 3(b), Florida Constitution (1968 Revision), a minimum exemption of $1,000.00 was required, thereby authorizing unlimited increase in the amount by general law. But the "head of the family" limitation remained in effect.
[6] As noted in the judgment entered by the trial judge, it is not unusual for the legislature to effect substantive changes in the tax laws by the process of "definition", or "inclusion" and "exclusion", whereby certain types of property, or some elements affecting its value, may be included or excluded for tax purposes. Cf. Sections 211.13, 193.023, 193.011(7), 193.451, 193.621, 196.011(1), Florida Statutes 1977.
[7] See Curry v. Lehman, 55 Fla. 847, 47 So. 18 (1908); Bryan v. Landis, 106 Fla. 19, 142 So. 650 (1932); State v. Young, 357 So.2d 416 (Fla.2nd DCA 1978).
[8] Section 192.001 "Definitions", subsection (11)(a), (b), (c) and (d).
[9] So-called, by the Department. The argument that this amendment created four "categories" of taxable personal property provides perhaps the major thrust for appellant's position.
[10] The Committee Comment following amended Section 192.032 and Section 192.042, added to Chapter 192 by Chapter 70-243, Laws of Florida, 1970, states that these provisions as to situs and effective date of taxation apply to "all forms of property". As originally enacted, no reference was made to household goods as a "form of property", nor has any such reference been added.
[11] Section 193.052 was added to Chapter 193 by Section 11, Chapter 70-243, Laws of Florida 1970. As originally enacted no return for household goods was required and no statute requires such a return at the present time. The only requirement of a return of household goods and personal effects appears in the official form promulgated by the Department, which was amended in 1978 to require, for the first time, return of such property by non-residents.
[12] The Attorney General's Opinion 068-59 (see footnote 3) acknowledged that these reservations and arguments as to the feasibility of continuing to tax such property were known to the Attorney General.
[13] It should be noted that the exemption statute, Section 192.201, Florida Statutes 1965, already contained language expanding its application to all persons residing and making their permanent home in Florida. See footnote 5, supra.
[14] See footnote 5, supra.
[15] Another example of legislative expansion with respect to the class of persons entitled to tax exemption is found in Section 196.24, Florida Statutes (1977), allowing tax exemption for ex-servicemen residents ten percent (10%) or more disabled, although the constitutional exemption extends only to "totally disabled" persons. Article 7, Section 3(b), Florida Constitution (1968).
[16] Affidavit of appellee Markham, noted in this opinion; and see footnote 3.
[17] Consistent with organic law since adoption of the 1968 Florida Constitution, Article 7, Section 3(a).